UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

SEAN M. THOMAS
PETITIONER

V.

EDWARD FICCO
RESPONDENT

CIVIL ACTION No. 04-10701-JLT

PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF OPPOSITION TO
RESPONDENT'S MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS

The Petitioner's memorandum of law in support of his opposition to the Respondent's motion to dismiss Petition for Writ of Habeas Corpus seeks to invoke the Equitable Tolling within the meaning of section 2244(d)(1)(B).

The district court for the 1st Circuit have stated that, habeas petitions filed under 28 U.S.C. 2254, where a party seeking to invoke the doctrine of equitable tolling, bears burden of establishing a basis for it. Trenkler v. United States, 268 F.3d 16,25 (2001). The district court made it pellucid that "equitable tolling, if available at all, is the exception rather than the rule; and that resort to its prophylaxsis is deemed justified only in extraordinary circumstances." Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002). It is reserved for cases in which circumstances beyond the litigant's control have prevented him from

promptly filing. Trenkler 268 F.3d at 24; Delaney v. Matesanz, 264 F.3d 7,15 (1st Cir. 2001).

## STATEMENT OF THE FACTS

The Petitioner had sent countless letters to the Committee for Public Counsel Services ("CPCS" hereinafter) demanding to be appointed counsel so to construct a Motion to Withdraw Guilty Pleas and for a New Trial ("Rule 30(b)Motion" hereinafter), for reasons that the former appointed counsel denied Petitioner effective assistance of counsel. As demonstrated within the Petitioner's affidavit, from September/1992 until June/1996, Petitioner had sent letters to the CPCS, the staff members in charge of assigning counsel. In June/1996, the Petitioner received counsel of a private law office, a Mr. Joseph Balliro ("Balliro" hereinafter), who CPCS had assigned to screen the Petitioner's Rule 30(b)Motion. Although, the petitioner's letters had addressed his demands for assistance to prepare a Rule 30(b)Motion, the staff members in charge at CPCS, a Ms. Leslie Walker and a Denise Simonini, both who refused to acknowledge the Petitioner's issuses and also refused to respond to Petitioner's letters, until April/1996, where a Ms. Leslie Walker ("Walker" hereinafter) sent Petitioner a letter stating that I should send her the "grounds" in which Petitioner will use in his Rule 30(b)Motion. Therefore, Petitioner sent Walker his Rule 30(b)Motion that was articulated with just the facts, without cited case law nor authority contents. However,

-3-

Petitioner at the time was ignorant to the Maasachusetts Rules of Criminal Procedures ("M.R.C.P." hereinafter), therefore his Rule 30(b)Motion was not in accordance to applicable law. Some weeks after the Petitioner sent his Rule 30(b)Motion to Walker, Petitioner was in receipt of a letter from Walker, who stated "there is nothing I can do for you regarding your request". At that time Petitioner was not in possession of his discovery materials that he received from Clarke during the "Fall/Winter" of 1991, because during that time the Petitioner had been subjected to physical and mental abuse from prison guards, who were retaliating against Petitioner because he was convicted of rape and was targeted a rapist. Many times during the retaliation against Petitioner, there was incidents that resulted into physical and verbal confrontations, vicious altercations and "severe repucussions". So therefore, the prison authorities imposed punishment upon the Petitioner where his privileges and his possessions on his person, which included his documentation that consist his discovery materials, however, the prison officials who were in charge of containing Petitioner's possessions had mistreated and purposely destroyed Petitioner's materials pertaining his criminal case. Every described incident is on record, " prepared by the Department of Corrections Parole Officials " who have denied the Petitioner parole eligibility at his last three parole hearings, after serving 11-years of imprisonment. During the month of June when CPCS had assigned Balliro to screen Petitioner's Rule 30(b)-Motion, Petitioner had wrote to Balliro repeatedly, requesting

consistantly that Balliro write to the court to obtain the discovery material so Petitioner can substantiate his claim of ineffective assistance of counsel before the statute of limitation for preservation of transcripts expires. Whereby, pursuant to M.R.C.P., the Supreme Judicial Court Rule 1:12, states that the "Court reporters are required to keep transcripts for only six years". Balliro did not receive nor respond to the Petitioner's letters because neither of the members at CPCS were receiving Petitioner's letters due to prison officials who were disposing the Petitioner's outgoing "Legal Mail", retaliating against the Petitioner's because he was suing the prison officials at the time for causing the Petitioner physical and mental injuries when they acted with malicous and recklessness towards the Petitioner in violation of "Color of State and Federal Law". However, the prison officials were disposing Petitioner's legal mail from August/1996 until May/1997. Petitioner did not become aware of prison officials' misconduct until the month of July/1997, when he met with Balliro for the first time during an attorney visit. During this time, Balliro informed Petitioner that he never received Petitioner's letters. Petitioner told Balliro that when he did not respond to his letters, he went ahead and submitted a revised Rule 30(b)Motion during the month of October/1996. Balliro told the Petitioner that he should write the "Clerk of Courts" and request a "Docket Entry" so to determine if the courts received his legal material due to the allegations of prison officials disposing Petitioner's legal

-5-

mail. Balliro informed Petitioner that CPCS assigned him to only screen Petitioner's Rule 30(b)Motion and that he was not assigned to prepare Petitioner's Rule 30(b)Motion. Balliro had advised Petitioner about filing a motion for appointment of counsel, suggested that the Petitioner contact his office when Petitioner receive the docket entry from the clerk of courts. If the courts are in receipt of Petitioner's revised Rule 30(b)Motion, Balliro informed Petitioner that there is noting that he can do. Further, Balliro told petitioner he will provide the screening of the revised Rule 30(b)Motion ("one of two copies that Petitioner had available"), and provide a finding by determining whether the revised Rule 30(b)Motion have merit and present this finding to the CPCS. Petitioner requested that whether Petitioner could could have his office notify the proper authorities about the prison officials disposing his legal mail. Balliro informed Petitioner that his office could not assist him regarding cicumstances of that nature, but that he could inform CPCS of the matter. Balliro suggested that Petitioner could notify the Attorney General's Office and the Post Master General Office. In August/1997, Petitioner was in receipt of the requested docket entry and the last entry docketed was on May 19,1994,when the court received the Petitioner's "Motion for Discovery". The petitioner's revised Rule 30(b)Motion was not docketed, which forced Petitioner to believe that the prison officials had disposed the Petitioner's legal mail from August/1996 until May/1997. At that time, Petitioner notify the Post Master General Office, the Attorney General's Office and Bureau of Special Investigation,

-6-

informing the agencies about the prison officials who had disposed Petitioner's legal mail that he sent to the courts and to attorneys. Further, Petitioner contacted Balliro and sent a copy of the docket entry. After many letters to the members at CPCS about the dissatisfaction Petitioner addressed pertaining Balliro's failure to respond to Petition in receipt of Petitioner's letters, Petitioner repeatedly requested that CPCS reassign another screening counsel. However, CPCS did not grant Petitioner's request and refused to do so after Petitioner provided evidence that belied Clarke's claims that she never misinformed Petitioner at the time of the pre-trial investigation and during the consultation prior to guilty plea hearing. Finally, petitioner had sought a grievance against CPCS, where Petitioner petition to the "Board of Bar Overseers, the Regional Administative Justice and the Superior Court Chief Justice". None of officials were able to provide Petitioner assistance. The Petitioner sought Post-Conviction Relief pro se.

## ARGUMENT

### EQUITABLE TOLLING

A party who seeks to invoke equitable tollingbears the burden of establishing the basis for it. <u>Carter v. W.Publ'g Co.</u>, 225 F.3d 1258,1265 (11th Cir.2002); <u>I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.</u>, 182 F.3d 51, 54 (1st Cir.1999). In the AEDPA envnironment, courts have indicated that equitable tolling, if available at all, is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances. E.g., <u>United States v. Marcello</u>, 212 F.3d 1005,

1010 (7th Cir.),cert. denied,531 U.S. 878, 121 S.Ct. 188, 148 L.E.d.2d 130 (2000); Davis v. Johnson, 158 F.3d 806,810 (5th Cir. 1998),cert. denied, 526 U.S. 1074, 199 S.Ct. 1474,143 L.Ed.2d. 558 (1999); Sandvik v. United States, 177 F.3d 1269,1271-72 (11th Cir.1999).

To be entitled to such equitable tolling, federal courts have held that a petitioner must show that he was prevented from filing his petition on time by "extraordinary circumstances" beyond his control and that he acted with reasonable diligence in pursuing his claims. See Miller v. N.J.St.Dep't of Corrections, 145 F.3d 616,616-68 (3rd Cir. 1998); see also Duffy v. Collins, 2000 WL 1477226, 230 F.3d 1358 (6th Cir.2000) (Table) (Stating that equitable tolling applies where the petitioner in some extraordinary way from asserting his rights and has diligently pursued 2254 relief); Craddock v. Mohr, 2000 WL 658023, 215 F.3d 1325 (6th Cir.2000).

The First Circuit identified five factors that are to be considered in applying the doctrine in individual cases: "(1) a lack of actual notice (to petitioner) of a time limit; (2)a lack of constructive notice of a time limit; (3)diligence in pursuit of one's rights; (4)an absence of prejudice to a party opponent; (5)the claimant's reasonableness in remaining ignorant of the time limit." Jobe v. Immigration and naturalization Service, 238 F.3d 96,100 (1st Cir.2001). Of these factors, all but the forth weigh in Petitioner's favor. "Petitioner was targeted by the prison officials as a rapist and therefore after they took possession of his property from his person,after placing Petitioner in solitary confinement, the prison officials mistreated and purposely disposed

-8-

Petitioner's material pertaining to his criminal case. When Petitioner sought civil action against prison officials, for the physical and mental injuries, the prison officials began disposing his legal mail which included his Rule 30(b)Motion to the court and his letters to lawyers. Further, when the States' agency for Public Defenders had post pone-screening of the Petitioner's Rule 30(b)Motion two years after the AEDPA was mandated by Congress and enacted April/1996.

## CONCLUSION

For the foregoing reasons, the Petitioner's opposition to the Respondent's motion to dismiss petition for writ of habeas corpus with memorandum of law and affidavit in support, as to the issue of whether the period of time during the petition for habeas review should be equitable tolled and the Respondent's motion to dismiss be denied.

Respectfully submitted,

Sean M. Thomas, Pro se.
SBCC
P.O. BOX 8000
Shirley, MA. 01464

DATED: 6/15/04