UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS


SEAN M. THOMAS
PETITIONER

V.

EDWARD FICCO
RESPONDENT


CIVIL ACTION No. 04-10701-JLT


PETITIONER'S BRIEF FOR WRIT
OF HABEAS CORPUS, PURSUANT TO
28 U.S.C. SECTION 2254

The Petitioner Sean M. Thomas asserts that several
constitutional issus pertaining his unlawful conviction due to
the fact he was denied effective assistance of counsel, that
which resulted Petitioner being denied his fundamental right to
a fair trial and a violation of his due process, making his guil-
ty pleas involuntaryly and unknowningly. Petitioner maintains
that his defense counsel ("counsel" hereinafter), was ineffective
in conjunction to his guilty pleas and the investigation proceding
it. Counsel had available to her highly  material, informative and
exculpatory evidence to provide a defense for a trial, yet counsel
failed to conduct a reasonable defense and investigation into the
"photo array procedure", where the victim had selected a photo
of her assailant, in which the photo did not depict the Petitioner.
Also, counsel failed to investigate the fingerprints evidence that
was located on a glass jar ("Jar" hereinafter),that contained
silver half dollar coins. The jar was discovered at the victim's
residence, that the assailant failed to discovered while searching
the residence. Although, counsel retained a fingerprint expert,

(2)

counsel incompetently had fingerprint evidence investigated
when she instructed the expert to determine whether the finger-
prints were planted onto the object by the Boston Police,
while having known that the fingerprints impression on the object
was due to petitioner burglarizing the victim's residence on an
earlier date. When instead counsel failed to have the expert
determine how long was and the age of fingerprints been on the
object by which the case was considered a "<u>Fingerprints-Only Case</u>"
in conjunction to petitioner's blood samples that was excluded of
a match to the evidence collected from the victim through a "<u>Rape-
kit Procedure</u>". Counsel's actions fell below a reasonable standard
of competency. Her actions were based on the lack of knowledge to
the applicable law of "Fingerprints Only Cases", in which counsel
did not converse with petitioner about. Instead counsel conversed
with petitioner about a guilty plea-bargain. Counsel had discussed
making a change of plea from a not guilty plea to a plea of guilty,
without advising the petitioner of other defenses that were avail-
able for a trial.

Further, counsel purposely  misinformed petitioner about the guilty
plea-bargain, counsel had told petitioner that plea hearing judge
had decided that what counsel had recommended for a prison sentence
would be what the judge will impose. On the date of the guilty plea-
hearing the judge made statements that belied what counsel had told
petitioner of the her recommendation for a prison sentence. The
judge did not decide to impose counsel's recommendation for a
prison sentence, instead the judge had decided to impose a larger
prison sentence. All along counsel's intentions were to have the
petitioner make a change of plea due to the fact that she never was
intending to go to trial, where counsel filed only one motion for
funds to hire an expert and filed fifthteen to seventeen motions
for continuances. Counsel neglected to investigate the Boston Police
acting in bad faith; they purposely spoke to the petitioner during
a line-up procedure while the a victim was watching. Instead, counsel
lied to the petitioner that the line-up was video taped and that
she will review the video tape. Several years after petitioner's

guilty plea conviction, counsel went on record before an assigned attorney from the Committee for Public Counsel Services' Screening Committee and she stated that she never told petitioner that the line-up was video taped, nor that she will investigate the Boston Police Officers that attended the line-up. Petitioner provded documentation within his appendix of his appeals brief, that belied counsel's claims.

Secondly, the petitioner asserts that his Petition for Writ of Habeas Corpus should be granted because, had counsel informed petitioner that fingerprints evidence coupled with other evidence may link petitioner to a crime, such as evidence that petitioner touched an object and it is later proved that the petitioner's fingerprints were on that object. If, however, the only identification evidence is the petitioner's fingerprints at the crime scene, the prosecution must prove beyond a reasonable doubt that the fingerprints was placed there during the crime. So therefore, the petitioner would not have pleaded guilty and would have insisted on going to trial.

## II. STATEMENT OF THE CASE

The petitioner made a change of plea from a not guilty plea, to a plea of guilty on June 12, 1991, in the Suffolk County Superior Court, before the Superior Court Justice James P. Donohue, 9-months from September 11,1990, on this date a Suffolk County Grand Jury returned indictments for Aggravated Rape, 2-counts of Armed Robbery, Armed Burglary and 2-counts of Assault by Means of a Dangerous Weapon. And 7-months from November 1,1990, on this date a Suffolk County Grand Jury returned indictments for Armed Assault in a Dwelling, Armed Robbery and Assault & Battery by Means of a Dangerous Weapon. Petitioner was imposed to serve 18-to-25-years imprisonment to the leading indictment of Aggravated Rape and 18-to-25-years imprisonment run-concurrently for the indictments of Armed Burglary, 2-counts of Armed Robbery and 2-of the indictments returned on November 1,1990; Armed Assault in a Dwelling and Armed Robbery. 9-to-10-years imprisonment run-concurrently for

(4)

Assault & Battery by Means of a Dangerous Weapon and 4-to-5-years
imprisonment run-concurrently for2-counts of Assault by Means of
a Dangerous Weapon. On May 31,1994, petitioner filed Pro se motion
for "Free Transcripts", on June 9,1994, motion was allowed(Donohue,
J.). On May 19,1997, petitioner filed pro se motion for "Discovery
with Affidavit in support". however, motion for "Discovery was denied
(Donohue, J.)." On July 8,1998, petitioner filed Pro se motion for
"Free Transcription of the Line-up that was video taped and another
Free Transcription of petitioner's Guilty Plea Hearing". On July 16,
1998, motions was allowed (Insofar as it seeks a copy of plea-colloquy,
filed, Donohue, J.) However, The above-mention motions was not sent to
the petitioner. On November 15,1999 petitioner filed Pro se motion
to "Withdraw Guilty Pleas and for a New Trial pursuant to M.R.Cr.P.
Rule 30(b), with an Affidavit and memorandum of law in support and
motions for Discovery and Appointment of counsel". On December 16,
1999, petitioner's Rule 30(b) Motion was denied (Donohue, J., with-
out a "Finding of Facts" nor "Memorandum of Decision and Order"),
and motions for "Discovery and Appointment of Counsel" was denied
(Donohue, J.). On September 11,2000, petitioner filed Pro se his
Appeal Brief; the Appellee for the Commonwealth filed their brief
in Opposition and on  July 19,2001, petitioner filed Pro se his
Reply Brief. On January 9,2002,  petitioner received "Oral Argument"
by "VIA A Telephone Conference", a Panel of three Judges of the
Appellate Court. The Panel Instructed the Appellee for the Common-
wealth, Ms.Amanda Lovell(Lovell Hereonafter), to obtain information
about whether the Commonwealth preserve the DNA evidence collected
from the rapekit. So to conduct a "DNA Test" for reasons previous
"Serology Blood Test" conducted is out-dated, which was conducted
in March/1991. On January 23,2002, petitioner filed Pro se motion
for "Preservation and Production of Evidence Related to DNA Analysis".
On February 24,2002, petitioner filed motion for "Stay of Sentence",
"Affidavit in Support", motion for "Funds to Hire Expert" and motion
for "Appointment of Appellate Counsel". All motions were denied, with

(5)

the exception of the motion for "Preservation and Preduction of
Evidence Related to DNA Analysis", where the Appeals Court "Docket
Notice" states 'newly discovered informative evidence', that
the Commonwealth filed a "letter with the court that no DNA evidence
exists".Docket notice dated December 6,2002. Prior to this date
of December 6, 2002, the petitioner did not receive notification
of the newly dicovered material containing ("highly material infor-
mative evidence")that no "DNA Evidence Exists". The Commonwealth's
letter was dated March 6,2002, and at that time the Appeals Court and
the Appellee for the Commonwealth, Lovell, had purposely neglected to
provide petitioner of the Commonwealth's letter and neglected to
respond to petitioner's "Demand Letters" of the status and preduction
of the DNA Evidence.(See petitioner's Motion for Evidentiary Hearing).
Due to the Appeals Court's neglect and Lovell's misconduct, petitioner
sought, superintendent relief from the Massachusetts Supreme Judicial
Court Pursuant M.G.L.c.211(3), see motion for evidentiary hearing.
On December 6,2002, the Appeals Court affirmed the denial of
petitioner's motion to 'Withdraw Guilty Pleas and for a New Trial'(
Rule 30(b)Motion Hereonafter), the petitioner filed a "Petition for
Rehearing on January 31,2003, which petitioner asserted constitutional
importance that he was denied due-process and that Appeals Court's
exparte communication with the Commonwealth pertaining the Common-
wealth's letter that "no DNA evidence exists" was a violation of the
petitioner's right to 'Equal Protection', further, petitioner was
deprived the opportunity to refute the Commonwealth's claim that no
DNA evidence exists. On February 14,2003, the Appeals Court denied
petitioner's "Petition for Rehearing" On February 12,2003, petitioner
filed "Petition to Obtain Leave for Further Appellate Review" before
the Maasachusetts Supreme Judicial Court. Petitioner  asserted that of
the Appeals Court's ex-parte communication with the commonwealth,
the newly discovered informative evidence that no DNA evidence exists
and the Appeals Court's ruling of affirming the denial of petitioner's
Rule 30(d)Motion (See Appeals Court's decision in a unpublished
opinion pursuant to M.R.Cr.P Rule 1:28, Commonwealth  v. Thomas,

(6)

56 Mass.App.Ct. 1113, 779 N.E.2d 1004(2002); and the
Massachusetts Supreme Judicial Court's decision, " denying
Petition for Further Appellate Review ", 439 Mass. 1103,
786 N.E.2d 395(2003). On March 13, 2004, the Petitioner filed
pro se his Petition for Writ of Habeas Corpus Relief pursuant
to 28 U.S.C. 2254.

### STATEMENT OF THE FACTS

The Petitioner asserts that counsel for the Defendant (Petitioner
hereinafter), during the pre-trial investigation denied him
effective assistance of counsel. Counsel had purposely misinformed
Petitioner about the following; (1) that the line-up procedure was
video taped. Some six years later, during an interview conducted
by an private attorney assigned by the Committee for Public Counsel
Services for Suffolk County, counsel falsified statements before
the private attorney stating that she never told Petitioner that
the line-up was video tape. Within the Petitioner's Appellate
Reply Brief and Appendix, contains letters from counsel that
contradict counsel's claim and the private attorney's 7-page
disposition of his screening of Petitioner's Rule 30(b)Motion,
contains counsel falsified statements, which is apart of Petitioner's

apppendix. (2) Counsel purposely misinformed the petitioner about
the plea hearing Judge's recommendation for a prison sentence, where
counsel told Petitioner that the Judge had decided that counsel's
recommendation for a prison sentence, a 12-to-20-years imprisonment
would be the sentence that the plea hearing Judge will impose if
Petitioner does make a change

(7)

Petitioner does make a change of plea, to a plea of guilty.
However, during guilty plea hearing the plea hearing Judge
said that counsel and the assistance district attorney along
with himself had agreed that the prison sentence that he will
impose, will be 18-to-25-years imprisonment if the Petitioner
decides on this day to make a change of plea to a plea of guilty.
Petitioner's plea colloquy transcripts contains counsel's
admitting the falsified recommendation of a 12-to-20-years
" prison sentence ", the Petitioner argued the conduct of
counsel misleading Petitioner into making a change of plea to
a plea of guilty, within his Appeal and his Petition for Further
Appellate review.(3) That the Commonwealth "possess" DNA evid-
ence from the victim throught the rapekit used upon the victim.
However, the Commonwealth produce a letter to the Appeals Court
ex-parte, without providing the Petitioner certification of
service, the letter contained "highly informative evidence that
no DNA Evidence exist."; and (5) Counsel retained a fingerprint
expert and incompetently had the expert investigate the finger-
prints evidence to determine whether the Boston Police planted
the fingerprint onto the jar instead of having the expert deter-
mine whether how old and the age of the fingerprint impression.
on the jar, due to the Petitioner constantly continue telling
counsel that he was innocennt to the crimes and someone else
other than the Petitioner comitted the crimes on the night of
the victim was raped. Counsel intentions from the time of the
Petitioner's line-up November/1990 until the time of pre-trial

(8)

hearing. In June/1991 counsel induce Petitioner into accepting
a plea bargain instead of going to trial due to the fact coun-
sel was never prepared and did not have a defense for trial. Coun-
sel had filed over 17-motions for continuances as seen on the
docket entry.

**THE PETITIONER'S PETITION FOR HABEAS
CORPUS RELIEF SHOULD BE GRANTED WITH
RESPECT TO THE FACT THAT THE STATE
COURT'S FACTUAL FINDINGS WERE BASED
ON AN "UNREASONABLE DETERMINATION"
OF THE FACTS IN LIGHT OF THE EVIDENCE
PRESENTED IN THE STATE COURT.**

title 28 U.S.C. 2254 governs the authority of the federal courts
to consider applications for writs of habeas corpus submitted
by state prisoners. This section amended by the Antiterrorism
Effective Dealth Penalty Act ("AEDPA" hereinafter) of 1996. The
AEDPA applies ro all petitions filed after April 24,1996.
Congress enacted AEDPA, it significantly  curtained the role
of federal habeas courts in reviewing petitions on a claim that
was adjudicated on the merits in the state court unless that
adjudication "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States." 28 U.S.C. 2254(d)(1)(2).


A state court decision is "contrary to" established federal
law if the the state court either " applies a rule that contra-
dicts governing law set forth in Supreme Court cases," or

(9)

"confronts a set facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supeme Court precedent." see <u>Williams v. Taylor</u>,<u>529 U.S. 362</u>,at 405-406,<u>120 S.Ct 1495</u>. A state court decision is an "unreasonable application" of Supeme Court precedent if ti "correctly identifies the govering legal rule but applies it unreasonably to the facts of a particular case." Id. at <u>407-08</u>,<u>120 S.Ct. 1495</u>.

An unreasonable application of federal law is different from an incorrect application of federal law. Under 2254(d)(1)'s "unreasonable application" clause, then, A Federal Habeas Court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly, rather, that application must also be unreasonable.

A district court can grant habeas relief is found in 2254(d)(2), the "unreasonable determinaton" of facts clause. Under 2254(d)(2), disrict courts must defer to the state court's factual conclusion unless they are based on an "unreasonable determination" of the facts in light of the evidence presented in the state court. Additionally, district courts must presume the correctness of the state court factual determinations, 28 U.S.C. 2254(e)(1), in other words the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary. <u>Mastracchio v. Vose</u>,<u>274 F.3d 590</u>,<u>597-98 (1st Cir.2001)</u>

(10)

I. THE PETITIONER'S INEFFECTIVE ASSISTANCE OF
   COUNSEL CLAIM, PERTAINING TO COUNSEL WHO
   ILLADVISED PETITIONER INTO MAKING A CHANGE
   OF PLEA TO A PLEA OF GUILTY.

A. THE FACTUAL BACK-GROUND OF THE
   ALLEGED CRIME THE PETITIONER
   WAS CHARGED WITH, THE INVESTIGATION.

On July 23,1990, the victim was awaken from an intruder who
was standing by the side of the bed where the victim laid, and
thought that the intruder was her husband. At that time, the
victim, a Ms.Cathy Johnson ("Johnson" hereinafter) called out
her husband's name, a Mr.Ted Regal ("Regal" hereinafter).
Regal was awaken and saw the intruder and asked what did he want.
The intruder told them both that he had a gun and that he will
kill them if they try to scream. He then told them that he wanted
their money. Regal told him that he had some in his wallet that
was located in another bedroom 1/. The intruder went into the
other bedroom to get the brief case and brought the brief case
to Regal. Regal open the brief case and took the money out of
the wallet gave it to the intruder. The intruder told Regal that
he needed more money "so to by drugs". Johnson told the intruder
that she had some money inside her wallet located in her purse.
After the intruder took the money from the wallet, he asked them
about how to shut off the alarm system located in at the front-
door, Johnson told him that she will shut off the alarm system.

---

1/This bedroom is called the second bedroom ("2nd bedroom" here-
inafter) as stated by Johnson and Regal, who seperately testi
fied at the grand jury minutes. Also they both testified that
the 2nd bedroom was where they had the "glass Jar" that con-
tained the dollar bills and Silver half-dollar coins. Further,
the Boston Police detectives who responded to the crime scene
testified that they discovered the Glass Jar with the Petition-
er's fingerprints,in the 2nd bedroom.

(11)

The intruder then took a suit jacket  and placed it over
Johnson's head to prevent from being identified and took John-
son to where the alarm system was located, in the living area.
Johnson told the intruder that the alarm system was already  shut
off. the intruder then took Johnson back into the bedroom and in
the door-way of the bedroom the intruder raped Johnson. After
the intruder raped Johnson, the intruder told Johnson and Regal
that they better wait ten-mintues after he leave before calling
the police. At that time the intruder ("Assailant" hereinafter)
fled from the residence. According to the Boston police Detectives
that (a Detective Powers and a Detective Thorthton2/) stated at
the grand jury minutes, that some hour or two before they respond-
ed to the crime scene at Johnson and Regal's residence, the Boston
Police had responded to a armed robbery that was reported that took
place on the same street that Johnson and Regal's residence is
located. The detectives also stated that, when they arrived at the
victim's residence, after seaching the apartment for evidence of where
the assailant might have been, they discovered a glass jar ("Jar"
hereinafter) 3/, which had fingerprint impressions on the surface.
After police investigation of the fingerprints impressions, the
Boston Police crime lab concluded that the fingerprints were that
of the Petitioner. Johnson and Regal both stated at the grand jury

2/Petitioner may of misspelled detective "Thorthton" name. Petitioner
   have only his recollection to the spellings of the names, where
   he is without the police reports due to the nondisclosure statute
   of the "rape shield" act pertaining the "Freedom Of Information Act"
3/Johnson and Regal refered the glass jar a "Pickle Jar".

(12)

minutes that, they called the police after they were certain
that the assailant was gone from their residence some several
minutes later, Johnson was taken to the hospital some two hours
later. Johnson gave police a description of the assailant where
she told police that she did not see the assailant's face because
it was during the night and it was dark inside the apartment.
The description Johnson gave police was that a Black male that
was 5'11" to 6ft tall, that weighed between 185lbs to 190lbs,
with a medium build and between 27 to 29-years of age.
Johnson received medical treatment and an examination which in-
cluded a rapekit procedure performed on her.4/ The prosecution
for the Commonwealth evidence  in the case against the Petitioner,
for Prosecution for aggravated rape, were the identification of
petitioner due to the his fingerprints discovered at the crime
scene located on a jar that contained silver half-dollar coins.5/
Johnson was given a photo array of mug-shots at the Boston Police
station some week after the night of the rape. During the photo
array procedure, Johnson selected a photo that did not depicted
the Petitioner. Petitioner was arrested two-months later for an
unrelated crime. Where an indictment for aggravated rape and a
warrant for an arrest were issued on September 11,1990. The

---

4/Counsel had informed Petitioner that the rapekit contained DNA
  evidence that consist seminal fluids. However,12-years later,
  after  oral argument pertaining Petitioner's appeal of his Rule
  30(b)Motion that was denied,the Commonwealth produced a letter
  to the Appeals Court through ex-parte communication, the letter
  contained newly discovered informative evidence that no DNA evid-
  ence exist.

5/The Boston Police Detective stated at the grand jury minutes that
  when they discovered the jar with Petitioner's fingerprints, the
  jar contained silver half-dollar coins.

Petitioner was brought into court on September 17,1990, the date
of the indictment hearing. Petitioner had met with an unknown
attorney for the first time that morning, where petitioner asked
the unknown attorney the where-abouts of the court-appointed
attorney who had visited the Petitioner a week prior to the indict-
ment hearing. The unknown attorney told Petitoner that the court-
appointed attorney was attending another court case with another
client, he will not be available to be present at this time and the
unknown attorney was asked to represent Petitioner.6/ The unknown
attorney made the Petitioner waived reading of the indictment and
plea not guilty. Petitioner received a bail of $500,000 surety,
or $50,000, cash without prejudice. Some two weeks later, Petition-
er received new counsel, a Ms.Holly A. Clarke, who came to visited
the Petitioner at the county prison. On October 30,1990, Ms.Holly Clarke

("Clarke" hereinafter), failed to have the Petitioner brought into
court for the "pre-trial conference" without the Petitioner's con-
sent nor did Petitioner request to waive his presence at the pre-
trial conference. In November/1990, Petitioner was brought to the
Boston Police Headquarters to attend a line-up that had 10-to-12
Boston Police officers that had on plan clothing. Clarke had con-
sulted petitioner that an investigator from the office of her Divi-

6/The unknown attorney name a Murray, C., a female attorney, that
   was from the same division of the court-appointed counsel, a
   Mr.Michael Schneider.

(14)

sion will photograph the line-up. Clarke had informed
Petitioner that the line-up will also be video taped. Four months
after the line-up procedure, on March 25,1991, Petitioner was
brought into court for the first time since the date of the indict-
ment hearing in September/1990. Clarke informed Petitioner that
the Commonwealth had filed motions for "Blood Samples" from the
Petitioner in which consist "blood, Saliva and Pubic hairs".
Clarke had filed motion for funds to hire an expert. Some two
weeks after Commonwealth filed motion for blood samples, the
Petitioner was order to submit the blood samples, in the medical unit
at the county prison. Where a Boston Police Officer of the
"Sexual Assault Unit" conducted the procedure to obtain the
Petitioner's Saliva and Pubic hairs, after the county prison
medical unit staff member, a register nurse, obtained Petitioner's
blood. On this day, "Clarke failed to be present, nor did she
inform the Petitioner that the procedure to submit blood samples
will take place on this day." In April of 1991, Clarke had visited
the Petitioner regarding the results of the Blood Test pertain-
ing the "Serology Blood Testing" of the Petitioner's blood samples
to the DNA evidence collected during the rapekit procedure con-
ducted upon Johnson. Clarke had informed Petitioner that his blood
samples were excluded of a match to the DNA evidence found on
Johnson. On June 6,1991, Clarke visited the petitioner in which
she informed Petitioner that she had discussions with the   Judge
and the prosecutor about a plea bargain offer. Clarke had explained
to Petitioner that the prosecutor had recommended a 25-to-40-years
of imprisonment as opposed to the reccommendation Clarke mentioned,

a 12-to-20-years of imprisonment. "Clarke misled the Petition-
er that the Judge had decided that Clarke's recommendation of
12-to-20-years of imprisonment, would be the prison sentence
he will give Petitioner, if the Petitioner does make a change
of plea, to a plea of guilty." Petitioner had agreed to make a
change of plea after Clarke conversed the only option for the
Petitioner was to accept the plea bargain.

<u>COUNSEL DENIED PETITIONER EFFECTIVE
ASSISTANCE OF COUNSEL TO THE INVESTIGA-
TION AND GUILTY PLEA.</u>

Clarke denied the Petitioner effective assistance of
counsel due to the fact that after the Petitioner offered his
admission to the burglarization of Johnson's residence on an
earlier date, where Petitioner had entered the residence through
the master's bedroom window,after ringing the door-bell several
times when nobody answered the door-bell. After Petitioner had
entered the residence, he searched the master's bedroom for
money and jewelry in which none the items were found. Petitioner
then entered the living area where there were appliances and a
front door that had an alarm system . Petitioner then relocated to
the bedroom area where he had entered a 2nd bedroom. After seach-
ingthe area of the 2nd bedroom, petitioner found a Glass jar that
contained dollar bills and silver half-dollar coins. It was at
that time the Petitioner grab the glass jar, during which he left
his "fingerprints impressions" on the glass jar. Further, the
Petitioner had told Clarke that he was unsuscessful of taking all
coins due to the Petitioner who fled in fear from the room after
he heard somebody coming into the apartment building. Petitioner
fled through the same entrance, the master's bedroom window before

anyone came into the residence.Clarke had failed to investigate
the photos and the photo that Johnson selected during the photo
array procedure, in which the photo did not depicted Petitioner.
Clarke had incompetently had the fingerprint expert investigate
the fingerprints impressions to determine whether the police
planted the fingerprints instead of having the expert determine
whether how long that of the fingerprints were on the glass jar.
Finally, Clarke had knowledge about Boston Police investigating
other cases involving rape where the Petitioner was considered
a suspect after a Petitioner photo was picked from a photo array
procedure. The victim had picked another man out of the line-up
that Petitioner attended in November/1990,where the Petitioner
was indicted on a seperate case. As to the rape case that police
considered Petitioner a suspect, the serology blood test results
of the DNA evidence collected through the rapekit was inconclu-
sive to the Petitioner's blood samples. However, Clarke informed
Petitioner the blood  test  showed consistancy of a blood-type.
Pettitioner informed Clarke that there is a possibility that the
someone else other than the Petitioner is committing the rapes
to both cases and that it could be the same person..

## ARGUMENT

Where a claim of ineffective assistance is directed to counsel's
representation incident to a guilty plea, the second prong of the
Saferian test requires a defendant to show "that there is a
reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to trial."
Hill v. Lockhart,474 U.S. 52, 59,106 S.Ct. 366,88 L.Ed.2d. 203(1985).

Challenges to guilty pleas based on ineffective assistance of
counsel are evaluated under the familiar
two-pronged cause and prejudice test set forth in Strictland v.
Washington,466 U.S. 668 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 203
(1984). See Hill,474 U.S. 52,at 58. When a defendant challenges
counsel's effectiveness during plea proceedings, the court must
ask: (1) whether counsel's advice was within the range of compet-
ence demanded of attorneys in criminal cases, and (2) whether the
defendant  suffered "prejudice." See Strictland,466 U.S. at 687-
691,104 S.Ct. 2052.

The Petitioner asserts that Clarke denied him effective
assistance of counsel in conjunction with his guilty pleas and
the investigation preceding it. A guilty plea is a "grave and
solemn act" that results in the waiver of a constitutional right
to trial. Brady v. United States,307 U.S. 742,748,90 S.Ct. 1463,
25 L.Ed.2d. 747 (1970) The plea must represent a "voluntary and
intelligent choice among the alternative courses of action open
to the defendant." Hill v. lockhart,474 U.S. 52,at 56... Clarke
failed to perform the duty to research the applicable law of
"fingerprints-only cases" and to advise the Petitioner in such a
way as to allow him to make informed choices, when Clarke under-
takes to represent Petitioner a criminal defendant. See Straw v.
U.S. 931 F.Supp. 49,51-52 (D.Mass.1996). The Petitioner's finger-
prints discovered at the crime scene, located on the surface of
the glass jar, was the only evidence the Commonwealth had against
Petitioner of prosecution for aggravated rape. The victim, Johnson
identified another man from the photo array "mug-shot" procedure,
Johnson's description of the assailant was a Black male 5'11 to

(18)

6ft" tall, between 185lbs-to-190lbs, medium build and between 27-to-29-years of age. The Petitioner at that time, during the pro-secution for aggravated rape, was 5'10" tall, weighed 165lbs, had a small build and was 21-years of age.  The Commonwealth's case against the Petitioner was based on the theory that Petition-er committed the acted of touching the glass jar that(contained the coins), during the commission of the crime. The federal district court have held that fingerprints evidence alone may under certain circumstances support a conviction. <u>United States v. Scott</u>,452 F.2d 660,662 (9th Cir.1971). However, in "fingerprints -only cases" in which the prosecution's theory is based on the premise that the defendant handled certain objects 'while committ-ing the crime in question,' the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date. See <u>United States v. Talbert</u>,710 F.2d 528,530-31 (9th Cir.1983); <u>United States v. Lonsdale</u>,577 F.2d 923, 926 (5th Cir.1978); <u>United States v. Van Fossen</u>,460 F.2d 38,41 (4th Cir.1972); <u>Borum v. United States</u>,380 F.2d 595 (D.C.Cir.1967). In order to meet this standard the prosecution must present evid-ence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were inaccessible to the defen-dant prior to the time of commission of the crime. See <u>Talbert</u>, <u>710 F.2d at 530-31</u>. The Petitioner in the case at bar offered h his admission containing the Petitioner who burglarized Johnson's residence on an earlier date in which he touched the glass jar

(19)

in order to "take" the silver half-dollar coins ("Coins"herein-
after), but was unsuccessful in taking all the coins. Petitioner
sought to prove that he was not the assailant that committed the
crimes upon Johnson and Regal on the night of the rape, by using
the discovered glass jar that contained the coins that police took
for evidence to investigate. 7/ There was only fingerprints that
link the Petitioner to the night of rape, but the photo that
Johnson selected, in which the photo did not depicted Petitioner,
but some other man, the description she gave police by which are
considered to be a man who is much older, much larger and taller than
the Petitioner, all of which were exculpatory to the defense.
Clarke knew of the testimony by Johnson and Regal during the
grand jury minutes, that the assailant demanded "more money to
buy drugs," and demanded more money after he rape Johnson, as
stated by Johnson that, "the assailant had realized; Johnson
and Regal "had very little money in the house" after the assailant
had taken their money from both wallets. There was no mention of
the coins in the glass jar, but they mentioned about how much
the assailant claimed to be "on drugs." Clarke was aware of the
fact that the assailant had to missed the glass jar with the
silver half dollar coins inside otherwise, it is safe to say that the
assailant would have taken the coins to add to the little money he

7/ The Petitioner requested the police investigation of the finger-
prints evidence but was denied by the Boston Police Director of
the Crime Labatory, who stated that the material is protected
under the rape sheild nondisclosure statute. See Petitioner's
affidavit in support of his Application to Petition for Writ of
Habeas Corpus, paragraphs #17, #20,#24 and #25.

(20)

had that he took from the wallets of Johnson and Regal.Second-
ly, the DNA evidence in the case used against the Petitioner,
the serology blood test results excluded Petitioner's blood samples
of a match. and there were another case in which the police thought
the petitioner a suspect,the victim picked another man   out
of the line-up . Clarke had failed to investigate the case as to
whether there was someone else other than the Petitioner who had
committed the rapes in which the Petitioner been charged with
due to the fact that the facts of the case were similar to the
Johnson and Regal case, where there was an assailant that involved
both cases, the crime took place less than 200-yards from both
residence, both crimes happened between 1:00am and 2:00am, and
both victims of rape gave police descriptions of a Black male of
5'11" to 6ft" tall, between 185lbs-to-190lbs, medium build and
27-to-29-years of age. petitioner sought to use the "other crimes
evidence" as a defense as to the analytical basis for the Petition-
er's proffer of the facts involving both cases was rarely- used
variant of Rule 404(b), also known as the reverse 404(b). Which
is evidence utilized to exonerate defendants .

Federal Rules of Evidence 404(b) provides:

> "Evidence of other crimes, wrong, or acts is
> not admissible to prove the character of a
> person in order  to show action in conform-
> ity therewith. It may, however, be admissible
> for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan knowl-
> edge, idenity, or absence of mistake or
> accident."

See <u>United States v. Stevens</u>,935 F.2d 1380 (3rd Cir.1991). See
generally Annotation, Admissibility and Weight of Evidence of
prior Misidenification of Accuse in connection with the Commission

(21)

of the crime similar to that presently charged. 50 A.L.R. 4th 1049 (1986). See Commonwealth v. Murphy, 282 Mass. 593, 185 N.E. 2d 486 (1933). State v. Bock, 229 Minn. 449 , 39 N.W.2d 887 (1949); Holt v. United States, 342 F.2d 163 (5th Cir. (1965); id. at 164-65; State v. Garfole, 76 NJ. 445, 388 A.2d 587 (1978), id. at 448.

## THE APPELLATE COURT'S ADJUDICATION WAS AN "UNREASONABLE DETERMINATION"

The Appellate court's adjudication of the Petitioner's appeal from the adverse ruling in the post-conviction proceedings of the motion Judge's denial of Petitioner's Rule 30(b)Motion, was an unreasonable determination. See the Appeals Court Memorandum an Order Pursuant to Rule 1:28, an unpublished opinion: Commonwealth v. Thomas, 56 Mass.App.Ct.1113, 779 N.E.2d 1004 (2002). The appeals court did not comment on Clarke's duty to investigate imposed by Strictland, thus there are no findings by the appeals court to which deference must be given. Based upon facts found in the adjudication of the appeals court in which it failed to comment about Clarke's failure to hire an investigator to investigate the connections and similarities of the rape cases as to the Petitioner's admission   about the fingerprints impressions on the glass jar and the fact that police investigation concluded that the glass jar contained silver half-dollar coins when police discovered the glass jar. The photo that Johnson selected that did not depicted Petitioner and the line-up where the victim picked a different man from the line-up involving the rape case that Petitioner was considered a suspect by the police and the exclusion of Petitioner's blood samples of a match to the evidence used against the Petition-

(22)

regarding prosecution for aggravated rape. In absence of a
reasonable investigation, Clarke could not accurately assess the
strength of the Commonwealth's case to assist Petitioner in
weighing the alternative course of action open to him Hill,474 U.S.
at 56,106 S.Ct. 366. Clarke did not offer an explanation of why
there was no investigation. Strictland,466 U.S. at 691,104 S.Ct.
2052 The appeals court did not comment on Clarke's failure to
offer the required advice to petitioner on whether Petitioner should
plea  guilty to a lesser offense.and Clarke's failure to conduct
a duty following her "independent examination of facts, circumstances
pleadings and laws involved and then to offer her informed opinion
as to what plea should be entered." Von Moltke v. Gillies,332 U.S
708,721,68 S.Ct. 316,92 L.Ed 309 (1948).

    The appeals court failed to identify the standards of
Strictland and Hill and then found that Clarke's only advice to
have the Petitioner "plea guilty, rather than proceed to trial, was
a reasonable tactical decision." (citing Osborne v. Commonwealth,
378 Mass.104,112 (1979) "and well within the standard of Common-
wealth v. Saferian,366 Mass.89,96 (1974)"), for reasons the appeals
court states that Petitioner's "claim of ineffective assistance of
counsel, premised on an alleged failure to investigate the possibility
that someone else committed the crimes, is without merit. The
presence of defendant's fingerprints in the victim's home (and the
defendant's implausible explanation that they had been placed there
during a prior, interrupted burglary attempt)."  The appeals court's
neglect to the applicable law of Fingerprint evidence; "The presence
of a fingerprint at the scene of the crime is not by itself a suffic-
ient basis for submitting a case to a jury... The prosecution must

(23)

coupled the fingerprints with evidence which reasonbly excludes the hypothesis that the fingerprints was impressed at a time other than when the crime was being committed." See Commonwealth v. Fazzino, 27 Mass.App.Ct. 485,487,539 N.E.2d 1060 (1989); Commonwealth v. Morris, 422 Mass.254,257,662 N.E.2d 683 (1996) ( "Fingerprint evidence coupled with other evidence may rationally link a defendant to a crime. Where, for example, there is evidence that a person touched an object, and it is later proved that the defendant's fingerprints were on that object, an inference that the defendant was present at the of the touching is warranted. If, however, the only identification evidence is the defendant's fingerprint at the crime scene, the prosecution must prove beyond a reasonable doubt that the fingerprint was placed there during the crime."). Had Clarke informed the petitioner that of the applicable law of fingerprints evidence, the Petitioner's appeal brief states that had advised Petitioner of the fact , "prosecution will have the burden to prove beyond a reasonable doubt before a jury that the fingerprints were impressed onto the glass jar during the commision of the crime, Petitioner would have not plead guilty and insisted on going before a jury trial.


## CONCLUSION

For the forgoing reasons, the Petitioner's Petition for Habeas Corpus Relief should be granted and the Respondent's Motion to Dismiss should be denied and the the Petitioner Opposition to the Respondent's motion to dismiss should be allow.

(24)

Respectfully submitted,

Sean M. Thomas, Pro se.
SBCC
P.O. BOX 8000
Shirley, MA. 01464

DATED: 6/15/04

UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS


SEAN M. THOMAS
PETITIONER

V.

EDWARD FICCO
RESPONDENT

CIVIL ACTION No. 04-10701-JLT


## CERTIFICATE OF SERVICE

I, Sean M. Thomas hereby say that he have sent atrue copy of
the motions to the Respondent's attorney, by 1st-class mail to
a Ms. Susanne G. Reardon, of the Attorney General Office,
Criminal bureau, at One Ashburton Place, Boston Ma. on this
15th= day of June, 2004


Sean M. Thomas,