UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 2004-10701-JLT

SEAN MAURICE THOMAS,
Petitioner

v.

EDWARD FICCO,
Respondent

**FINDINGS AND RECOMMENDATION ON**

**THE RESPONDENT'S MOTION
TO DISMISS THE PETITION FOR A WRIT OF HABEAS CORPUS
(DOCKET #6)**

ALEXANDER, M.J.

On April 6, 2004, the petitioner, Sean Maurice Thomas ("the Petitioner"), acting *pro se,* filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts. Therein, the Petitioner asserts a variety of constitutional infirmities surrounding his conviction, including ineffective assistance of counsel and purported due process violations arising from an allegedly unwillingly guilty plea and a denial of his appellate rights. The respondent, Edward Ficco ("the Respondent"), moves to dismiss the petition as untimely. The matter was referred to this Court for Findings and Recommendation, and the Court has considered carefully the papers presented. For the reasons more fully detailed below, this Court RECOMMENDS that the Respondent's Motion to Dismiss be ALLOWED.

## RELEVANT BACKGROUND

On June 12, 1991, the Petitioner plead guilty to various crimes, including aggravated rape and armed robbery. He was sentenced to a number of concurrent sentences of eighteen to twenty-five years imprisonment.

On November 15, 1999, the Petitioner moved to withdraw his guilty plea based on two theories: his counsel was ineffective, and his plea was entered involuntarily. The trial court denied the motion, a decision affirmed on direct intermediate appeal. Commonwealth v. Thomas, 56 Mass. App. Ct. 1113 (2002). The Supreme Judicial Court subsequently denied further appellate review on April 2, 2003. Commonwealth v. Thomas, 439 Mass. 1103 (2003) (table). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.

Thereafter, the Petitioner brought the petition for habeas relief in the federal court. The Respondent now moves to dismiss the petition, contending that the petition is time-barred pursuant to the relevant provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. 2244, *et seq*.

## ANALYSIS

Pursuant to the AEDPA, a timely habeas petition must be filed within one year of the date the prisoner's conviction became final. 28 U.S.C. 2244(d)(1). For convictions which became final prior to the enactment of the AEDPA -- that is, April 24, 1996 -- there is a one year "grace period" running from the AEDPA's enactment during which a

habeas petition must be brought in order to be timely. Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999). A state conviction becomes final, for AEDPA purposes, at the conclusion of direct review, or the date on which the possibility of further appellate review is no longer available. 28 U.S.C. 2244(d)(1)(A). However, the AEDPA limitations period is tolled during the pendency of a state court post-conviction challenge. 28 U.S.C. 2244(d)(2).

Processing the relevant dates of the instant case through the above framework, the Petitioner's conviction became final upon the expiration of time to appeal the trial court's acceptance of his guilty plea. The plea was accepted on June 12, 1991, and the Petitioner had 30 days from that date to appeal its acceptance. *See* Mass. R. App. P. 4(b). Thus, his conviction became final on July 12, 1991 – a date prior to the enactment of the AEDPA. As such, the Petitioner is subject to the "grace period" for the statute of limitations contained in the AEDPA and as noted in Gaskins. Absent any tolling, in order to be timely, his petition must have been on or before April 24, 1997.

The Petitioner filed his first state post-conviction challenge, in the form of a motion to withdraw his guilty plea and for a new trial, on November 15, 1999. This filing date is well beyond the April 1997 deadline. Indeed, the Petitioner recognizes that his petition is not timely, but asks that the Court equitably toll a portion of the period between the date of his final conviction and the date he filed his first post-conviction challenge.

Equitable tolling is a doctrine by which a court may extend a statutory limitations

3

period "for equitable reasons not acknowledged in the statute creating the limitations period." David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003). A party seeking to invoke equitable tolling bears the burden of establishing the basis for it. Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004). This is indeed a heavy burden: "equitable tolling ... is the exception rather than the rule" and "justified only in extraordinary circumstances." Id. at 42 (internal quotations and citations omitted). One may not rescue himself from his own lack of due diligence by invoking equitable tolling; it is only available to cure circumstances beyond one's own control. Id.

As a basis for the Petitioner's request for equitable tolling, he alleges in detail a series of events, the crux of which being that prison staff routinely discarded or otherwise tampered with the Petitioner's outgoing legal mail for a period of time beginning in or around August 1996. The Petitioner alleges that he attempted to file a motion for a new trial with the Superior Court in October 1996, which would have tolled the AEDPA statute of limitations had it been received by the court. However, allegedly as a result of the tampering, the motion was not received. The Petitioner claims to have discovered the mail tampering in July 1997.

The Petitioner subsequently attempted, successfully, to file a motion to withdraw his guilty plea and for a new trial. The motion was received by the court on or about November 15, 1999. The record is silent as to absence of any filing between the time at which the petitioner realized that there was mail tampering (July 1997) and the time at

4

which he filed the motion to withdraw the plea (on or around early November 1999).

The trial court denied the motion to withdraw the plea on or about December 16, 1999. The Petitioner timely appealed that denial on January 1, 2000. The appeal before the Massachusetts Appeals Court was denied on December 6, 2002, and the Supreme Judicial Court denied further appellate review on April 2, 2003. From that date, i.e., April 2, 2003, the Petitioner had 90 days to seek *certiorari* from the United States Supreme Court. He did not do so, ostensibly choosing instead to pursue relief through the habeas process.

The allegations of mail tampering raised by Petitioner are of a most serious nature, for "[i]t is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." Johnson v. Avery, 393 U.S. 483, 485 (1969). If proven, the allegations likely warrant some amount of equitable tolling. But even assuming the Petitioner can prove the allegations of mail tampering, a more delicate question is what period of time should be equitably tolled because of that interference.

The Petitioner alleges that prison staff began tampering with his legal mail at some point on or before October 1996, and that he became apprised of this state of affairs in July 1997.[1] The Petitioner's awareness of the prison officials' purported malfeasance

---

[1] According to his affidavit, the Petitioner became aware of the alleged misconduct in the course of attempted correspondence with Attorney Joseph Balliro. Attorney Balliro was appointed to Petitioner's case on June 6, 1996 as a screening lawyer for the Petitioner's new trial motion. The Petitioner had sent Mr. Balliro various letters concerning the new trial motion he desired to file, but received no response. At some time in October 1996, the Petitioner allegedly filed his new trial motion without Mr.

5

arguably called for an increased caution in important correspondence. For example, the Petitioner informs the Court that he filed criminal complaints to various authorities detailing the prison officials' misconduct via certified mail, return receipt requested. This mode of postal correspondence was a prudent way to guard against (or at least promptly discover) any improper tampering with the Petitioner's mail. The availability of this safeguard, however, is fatal to Petitioner's tolling prayer.

In this instance, where the discovery of unjust circumstances is tantamount to overcoming them, equitably tolling any time beyond the discovery of the misconduct – that is, beyond July 20, 1997 – seems unwarranted in the context of a request for equitable tolling in habeas review. Foremost, there is neither an explanation as to why the petitioner did not pursue habeas relief at that time, nor is there a suggestion that such relief was pursued but thwarted by prison officials vis-a-vis mail tampering or other obstructions.[2] In the absence of such allegations, the Court will not assume that such events took place.

Moreover, although "affirmative misconduct on the part of a defendant [which]

---

Balliro's assistance. In July 1997, the Petitioner met with Mr. Balliro in person. Mr. Balliro was unaware of any letters the Petitioner had sent to him, and suggested that Petitioner obtain a copy of the Superior Court docket. The Petitioner wrote to that court on July 7, 1997 requesting a copy of the docket. He received it on July 20, 1997; it contained no entry of his October 1996 motion.

[2]The Court reiterates that the Petitioner successfully filed his motion for a new trial on November 15, 1999. He does not allege any unsuccessful attempts at filing that motion between July 27, 1997 and November 15, 1999, or offer other reasons that warrant further equitable tolling.

6

lulled the plaintiff into inaction" may warrant equitable tolling, a mere "fail[ure] to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984) (internal citations omitted). Assuming *arguendo* that there is proof of the prison officials' misconduct as averred by the Petitioner in his affidavit, and allowing *arguendo* tolling for that time period, the Court FINDS that the Petitioner's AEDPA clock nevertheless began ticking on July 27, 1997 at the latest.[3]

As such, the Court FINDS that the instant petition is still untimely filed – even if the District Court were to equitably toll the period of alleged misconduct from the calculus of the statute of limitations.[4]   The Court thus RECOMMENDS that the motion to dismiss by the Respondent be ALLOWED.

---

[3] This date – the date on which Petitioner received confirmation that his October 1996 motion never reached the trial court – is fairly charitable. Arguably, the date on which he became aware of the prison officials' misconduct was on or before July 7, 1997, the date on which he wrote to the trial court.

[4] In so finding, the Court is not without some understanding that portions of the delay resulted from insurmountable circumstances beyond the Petitioner's control. However, the alleged misconduct is not sufficient to afford *carte blanche* discretion in which to file his petition. Moreover, once the Petitioner discovered a simple way to traverse the obstructions in his path, he stepped outside the purview of the equitable tolling doctrine.

CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that the Motion to Dismiss by the Respondent, Edward Ficco, be ALLOWED.[5]

SO ORDERED.

8/26/04
Date

United States Magistrate Judge

### NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this proposed report and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980). See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed. 933 (1986).

---

[5]In so RECOMMENDING, the Court notes that there is an extant motion by the petitioner for appointment of counsel. That motion is not before this Court.