The United States District Court
of
The District of Massachusetts

Sean Maurice Thomas
Petitioner

V.

Edward Ficco

Civil Action No. 2004-10701-JLT

Petitioner's Affidavit In
Support of Motion To
Object The Judge Magistrate's
Findings and Recommendation
On Respondent's Motion To Dismiss
Petition For Writ of Habeas Corpus

I, Sean Maurice Thomas, have sworn that the following paragraphs are true and accurate to the best of my knowledge under penalties of Perjury.

1. On 7/24/04, I was assaulted and badly beaten by prison guards, who sought to do bodily harm to me because of my association with inmate Joseph Clark, who was accused by prison authorities that he assaulted a prison guard, Correctional Officer Jeffery Grimes. See Exhibit (Exh.) No 1.

2. I had knowledge that prison officials were disposing my letters to notify the proper authorities due to the fact I been assault and beaten, by prison guards. Of the five letters I tried to send out

under different inmate's name, a letter to the State Police, the District Court for Criminal charges of Norfolk County, the Attorney General Office, the Commissioner of Corrections, and a letter to a family member that which was confiscated by the Prison authorities See exh. No 2. The remaining 4-letters were disposed of.

3. I wrote to the Superintendent of the disposal of the remaining 4-letters and the fact of the prison guards that assaulted and beaten me, the Superintendent, Ronald Duval wrote to me. The letter he wrote indicated that he was unaware of the prison guards that assaulted me See exh. No 3

4. I had sent two letters to the Commissioner of Corrections about the prison officials that had destroyed most of my property and about the prison guards who assaulted and beaten me, However, the assistance Deputy to the Commissioner of Corrections had responded instead. See exh. No 4

5. It was during the time between July-1997 and December-1997, Prison officials had denied me access to meaningful Law-Library supplies, and copies, Criminal Law and Civil Law resources, preventing me of notifying the proper authorities about the brutality that I received from prison guards and the on-going abuse. Until I had an inmate who volunteered to notify the Harvard Law students of the Prisoners Legal Assistant Project (PLAP), to visit me due to the

incidents that was And had taken placed.

6. In December-1997, I was visited by members of PLAP by which during this time I informed them of the incidents that I was involved in. The member of PLAP had decided to help me with with notifying the proper authorities and sought to continue of keeping in contact by telephone by collect calls to the PLAP agency and by visitation

7. From January 1998 - Until March the members of PLAP where closed during the time off for scheduled classes. During this time I wrote to the members of CPCS, (Committee for Public Counsel Services) about the where about of the Screening Attorney Joseph Balliro for reasons Balliro failed to provide services that I requested over the phone.

8. In February - 1998 - I sent two letters demanding that the members of CPCS reinstate another screening attorney because I had received Balliro Screening Report that contained falsified incidents, that Balliro had received my Motion To Withdraw Guilty Pleas and for A New Trial (New Trial Motion) See Exh. No. 5

9. I had notified the member of CPCS about my former Court-Appointed Counsel Holly A. Clarke, who had admitted to Balliro, who interviewed Clarke, where she went on record and stated that there was never during any time she had informed me that the Line up Procedure

at police Headquarters, pursuant to a Grand Jury order and an investigation, was indeed video taped. I had copies of two letters from Clarke, dated September-1992 and March-1994, demonstrating that Clarke did informed me that the line-up was videotaped, therefore, Clarke misled me to believe a video tape exist.[1]

10. When members of CPCS refused to assign a new Screening Attorney due to the falsified Screening Conducted by Ballira containing Clarke's misrepresentation, on April 1, 1998, I received a letter from a Ms. Leslie Walker (Walker) of CPCS, who is the Director, informing me that senior appellate member had agree against me receiving appointment of appellate counsel See exh. No 6

11. In April-1998, I was in contact with a member of PLAP, Ms. Ann Lipton (Lipton), where I informed her of the members of CPCS' deceit of the Screening process that was the product of falsification conducted by Ballira. I requested of her criminal law material of how to file a timely New Trial Motions, and how to substantiate Due Process and Denied effective assistance of counsel claims.[2]

12. On April 29, 1998, Lipton contacted me by mail regarding the requested criminal Law material that I

---

[1] I had reasons to believe that a video tape did exist due to Clarke's constantly referring the lineup that I arguably addressed about the Police Officers who attended the line-up (in plan-clothing) and questioned me during which the victim was watching, by which the victim picked me out of the lineup. The Police officer actions was in bad faith against me. I had presented these issues within my new trial motion and appeal.

[2] I had requested that Lipton provide me the addresses of other agencies that provide criminal legal services for prisoners because the students at PLAP did not practice criminal law, and I was without meaningful access to the Court because the Prison Law Library was very inadequate. Whereby, The Law Library was without the United States Supreme Court enactments of the AEDPA of April-1996.

made to her. See exh. No. 7

13. In may-1998, I telephoned the members of CPCS through a collect call, requesting the addresses of the agency in which for me to petition an appeal to CPCS members' denial of appointment of Appellate Counsel. However, the CPCS' intern had refused to forward my request, where I was forced to request assistance from Lipton who telephoned the members of CPCS by which Lipton forwarded my request.

14. On May 11, 1998, I was in receipt of a letter from CPCS member Walker, that contained the address of the agency that supposely over sees grieved appeals regarding CPCS' Screening process. See exh. No. 8

15. Due to the inadequate Law Library of where I was incarcerated, I sought to file grievance against prison officials due to the fact that of the criminal law material from other Law Libraries of non-prison assistance agencies; that I had received the prison Law Library lacked, or was not up to date. I filed a grievance that in order to substantiate my rights that were denied, making my conviction unlawful, the prison officials needed to provide and up-date the inadequate Law Library. I had sent the original grievance to Lipton to make request for copies. See exh. No. 9

16. On July 2, 1998, I was in receipt of a letter from an Associated Justice regarding my appeal regard CPCS misleading me about how to file time New Trial Motion. The Associated Justice informed me that was unable to assist me. See exh. No. 10

17. In July-1998, I sought to notify proper office of the Superior Court Division about CPCS misleading me of filing a timely New Trial Motion. I wrote to the Superior Court Regional Coordinator and the Chief Justice of the Superior Court Division, and the Board Of Bar Overseers.

18. On July —, 1998, I was in receipt of a letter that was addressed to the Chief Counsel Member of CPCS, William J. Leahy, and copied for my receipt stating that the CPCS member review the correspondence I sent to the Regional Coordinator. See exh. No. 11

19. On August 21, 1998, I was in receipt of a notification of my accusation, from the member of Board Of Bar Overseers, Ms. Wonne P. Toyloy. See Exh. No. 12 Stating that my accusation are of a isolated matter.

20. I submitted a 7-page letter detailing the CPCS members of how they misled me about filing a New Trial Motion. I sought to have my accusation reviewed.

21. I was in receipt of a letter from CPCS member Walker that was addressed to Balliro, requesting that Balliro respond to my matters. See exh. No. 13

22. On October 27, I was in receipt of a letter from Ms. Walker, of her detailing the actions of Balliros Screening. See exh. No. 14. However, Ms. Walker have failed to mention that Balliro falsified his Screening when suggested he had my New Trial Motion.

23. On December 8, 1998, I was in receipt of a notification from the General Counsel of the Board of Bar Overseers, informing me that the matter in reference to CPCS is Closed. See exhibit No. 15.

24. In November-1998, I was transferred to another prison facility Souza-Baranowski Correctional Center (SBCC) by which some time after, the prison officials of the prison where I was previously confined had lost my property during the process of shipping my property to SBCC.

25. I had notified the members of the Massachusetts Correctional Legal Services (MCLS) about prison officials who temporarily lost my property. On February 18, 1999, the member at MCLS Ms Lauren Petit (Petit) forward a request I made, to recover and obtain the discovery material that CPCS had in their storage. See exh. No. 16

26. On March 15, 1999, I was in receipt of a letter from CPCS member Walker informing me that of what documentations and material that she has in which was recent letters and responses within those previous months. See Exh. 17.

27. Therefore I, Sean M Thomas, have sworn that the following paragraphs 1 through 27, are true and accurate signed under Penalties of Perjury on this 24th day of September, 2004. _Sean M Thomas_